**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**CRAIG PLANT,
ADC #147784**                                                                                      **PLAINTIFF**

**V.**                            **CASE NO. 4:13CV00234 DPM/BD**

**RAY BROOKS, et al.**                                                                  **DEFENDANTS**

### RECOMMENDED DISPOSITION

**I.**     **Procedure for Filing Objections:**

This Recommended Disposition ("Recommendation") has been sent to United States District Judge D.P. Marshall Jr. Any party may file written objections to this Recommendation.

Objections must be specific and must include the factual or legal basis for the objection. An objection to a factual finding must identify the finding of fact believed to be wrong and describe the evidence that supports that belief.

An original and one copy of your objections must be received in the office of the United States District Court Clerk within fourteen (14) days of this Recommendation. A copy will be furnished to the opposing party.

If no objections are filed, Judge Marshall can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may also waive any right to appeal questions of fact.

Mail your objections to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

**II.    Background:**

Plaintiff Craig Plant, an Arkansas Department of Correction ("ADC") inmate, alleges that he was injured after falling through a skylight at the Wrightsville Unit of the ADC. He claims that ADC and medical staff failed to provide him adequate medical treatment after the fall. (Docket entries #2, #4, #8)

In his complaint, Mr. Plant named various ADC staff members and medical personnel as defendants. (#2) The Court has already dismissed Mr. Plant's claims against Defendants Green, Brooks, Jones, Kirk, and Mosby. (#11, #44, #62, #72) Medical defendant Vesta Mullins and ADC Defendants Burton, Harmon, and Kelley[1] have now moved for summary judgment. (#63, #66) The Court recommends that both motions be GRANTED.

---

[1] Defendant Kelley is listed on the docket sheet as Defendant Kelly. This appears to be a misspelling of her name, as indicated by her answer to Mr. Plant's complaint. (#46) Accordingly, the Clerk is directed to correct the spelling of Defendant Kelley's name on the docket sheet.

**III.     Discussion:**

A.     Standard

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine dispute as to any material fact. FED.R.CIV.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 246, 106 S.Ct. 2505 (1986). A party moving for summary judgment must present evidence to show that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986). If the moving party meets this burden, the nonmoving party must come forward with evidence showing that there is a genuine dispute as to a material fact — a dispute that must be decided at a trial. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the nonmoving party does not submit enough proof to establish a necessary element of a claim, the moving party is entitled to judgment on that claim. *Celotex Corp.*, 447 U.S. at 322-23, 106 S.Ct. at 2552.

B.     Undisputed Facts

Mr. Plant had been working on the fence crew, but on May 2, 2012, he was temporarily reassigned to work on the maintenance crew, which was re-roofing the chow hall at the Wrightsville Unit of the ADC. (#69-1 at p. 17) Mr. Plant was moving insulation while on the roof of the chow hall when he fell six-to-nine feet through a

skylight and landed on top of the safety ceiling. (*Id*. at pp. 17-18) Mr. Plant was seen in the infirmary on the day of the accident. (#69-2 at pp. 4-5)

On May 9, 2012, Marvin Kirk, M.D., entered a verbal order prescribing Tylenol 3 for Mr. Plant and ordered an x-ray of his back and elbow. (#66-7 at p. 2, #69-2 at pp. 16-17) The x-ray of the elbow was normal, and the x-rays of the lumbar spine were normal, except for a "partial sacralization of L-5." (#64-4 at pp. 7–8, #69-2 at p. 17)

Nasir Allen Zareen, M.D., examined Mr. Plant on June 8, 2012. (#66-7 at p. 3, #69-2 at p. 13, #69-3 at p. 2, #69-4 at pp. 6, 14) Dr. Zareen prescribed naproxen and insoles. He also exempted Mr. Plant from all work activities, sports activities, and yard call until June 22, 2012. In addition, he ordered an MRI of Mr. Plant's lumbar/sacral spine. (#69-4 at p. 16)

On June 21, 2012, Marvin N. Kirk, Jr., M.D., examined Mr. Plant, who continued to complain of back pain radiating to his right leg. (#66-7 at p. 4, #69-2 at p. 19, #69-3 at p. 4, #69-4 at p. 17) Dr. Kirk prescribed ibuprofen, Tylenol, an extra mat, and ordered no work activities for Mr. Plant until December 25, 2012. Dr. Kirk also requested an MRI of Mr. Plant's lumbar spine. (#64-5 at pp. 77-80, #66-7 at p. 4, #69-4 at pp. 17-18)

After examining Mr. Plant on August 2, 2012, Dr. Zareen noted that: reports of x-rays were negative, and a July 5, 2012 MRI showed no evidence of fracture, subluxation or any pathologic marrow process; the conus medullaris was normal; his disc spaces were well maintained; and there was no evidence of degenerative disc disease, focal protrusion,

central canal stenosis, or foraminal narrowing at any level. (#64-4 at p. 21, #66-7 at p. 6) Dr. Zareen concluded that a consult with a neurosurgeon was not necessary. He later consulted with Dr. McKinney, who agreed with Dr. Zareen's assessment. (#66-7 at pp. 6-7)

On September 19, 2012, Defendant Mullins requested a physical examination for Mr. Plant to determine whether his classification should be changed as a result of his injury. (*Id*. at p. 7) Robert Reichard, M.D., performed the physical examination on October 11, 2012. (#64-4 at pp. 23-25, #66-7 at p. 8) Mr. Plant was later examined by Dr. Shock, an orthopedic physician. (#69-3 at p. 8)

Mr. Plant filed four grievances between the date of his accident and April 17, 2013, when he filed his complaint in this case. (#69-3 at pp. 6-7) Specifically, he filed grievances WR-12-00138, WR-12-00166, WR-12-00174, and WR-12-00310. (#69-3 at pp. 6-7, #69-5 at pp. 1-13) Mr. Plant fully exhausted grievances WR-12-00138, WR-12-00174,[2] and WR-12-00310. (#64-2 at pp. 1-4, 7-15, #64-3) Grievance WR-12-00166 was rejected because it was untimely and duplicated grievance WR-12-00138. (#64-5 at p. 86)

---

[2]References to grievance WR-12-00176 in Defendant Mullins's statement of undisputed facts and the affidavit of Shelly Byers appears to be a typographical error. (#64 at p. 3, #64-3 at p. 1) The attached grievance is WR-12-00174. (#64-2 at pp. 7-11)

C.   Exhaustion

ADC Defendants Burton, Harmon, and Kelley contend that Mr. Plant failed to fully exhaust grievances against them.  The Court must address this issue prior to addressing the merits of Mr. Plant's deliberate-indifference claim against these Defendants.  See *Davis v. Harmon,* Case No. 10-1863, 2010 WL 3259378, (8th Cir. Aug. 19, 2010) (unpublished opinion) (holding that the trial court erred when it dismissed the case with prejudice on the merits without first considering the exhaustion issue and dismissing without prejudice).

It is settled law that prisoners must exhaust all "available" remedies before filing suit under 42 U.S.C. § 1983.  42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S. 731, 738, 121 S.Ct. 1819 (2001) (holding that available remedies "must be exhausted before a complaint under § 1983 may be entertained").

For purposes of § 1983, an "available remedy" is one that is "capable of use for the accomplishment of a purpose; immediately utilizable [and] accessible." *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001).  If a claim is not fully exhausted by the time a lawsuit is filed, the Court must dismiss that claim. *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003).  The prison's own procedures, rather than the Prison Litigation Reform Act, set the rules for exhaustion. *Jones v. Bock*, 549 U.S. 199, 218 (2007).  Furthermore, an inmate's beliefs as to the effectiveness of prison's administrative procedures are irrelevant in

determining whether administrative procedures were available. *Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000).

It is undisputed that Mr. Plant fully exhausted three grievances related to his claims in this lawsuit: WR-12-00138, WR-12-00174,[3] and WR-12-00310. (#64-2 at pp. 1-4, 7-15, #64-3) In grievance WR-1-00138, Mr. Plant complained that he was experiencing pain in his right arm and lower back as a result of the accident and that medical staff were denying him medical attention. (#64-2 at pp. 1-4) In grievance WR-12-00174, Mr. Plant complained that Defendant Mullins told him he was going to be seen by a doctor on June 1, 2012, but as of June 7, 2012, he had not seen a physician and was still in pain. (#64-2 at pp. 7-11) In grievance WR-12-00310, Mr. Plant complained that Defendant Mullins was told that the physician who was going to perform the physical examination of Mr. Plant did not have experience in the field, but had the physician perform the physical anyway. (#64-2 at pp. 12-15)

Under the ADC grievance policies in effect during the relevant time period, "fully exhausting" administrative remedies meant filing a grievance that named the specific staff members against whom allegations were made and setting out the facts of what happened to cause the inmate's grievance. (#66-1, #66-2) Mr. Plant has not come forward with any evidence to show that he fully exhausted any grievance identifying ADC Defendants

---

[3] References to grievance WR-12-00176 in Defendant Mullins's statement of undisputed facts and the affidavit of Shelly Byers appears to be a typographical error. (#64 at p. 3, #64-3 at p. 1) The attached grievance is WR-12-00174. (#64-2 at pp. 7-11)

Wendy Kelley, Greg Harmon, or Gary Burton. (#64-2 at pp. 1-4, 7-15, #694 at pp. 1, 3, #66-3 at p. 2) His claims against these ADC Defendants should be dismissed, without prejudice.[4]

Mr. Plant, however, exhausted grievances against Defendant Mullins. Thus, the Court will consider Mr. Plant's deliberate-indifference claim against her.

D.   Deliberate Indifference

"Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *McRaven v. Sanders*, 577 F.3d 974, 979 (8th Cir. 2009) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To prove that a prison official failed to provide adequate medical treatment, Mr. Plant must show that he suffered from an objectively serious medical need, and that the named Defendant "knew of the need yet deliberately disregarded it." *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004).

An inmate's subjective belief that more should have been done – while certainly a disagreement – is not the kind of genuine dispute that requires a trial. *Dulany v. Carnahan*, 132 F.3d 1234 (8th Cir. 1997). Under settled law, mere disagreement with treatment decisions does not rise to the level of a constitutional violation. *Pietrafeso v.*

---

[4] Because Mr. Plant has failed to present evidence that he exhausted his administrative remedies against these ADC Defendants, the Court will not address the *respondeat superior* and qualified immunity arguments raised in the ADC Defendants' motion for summary judgment.

*Lawrence County, S.D.*, 452 F.3d 978, 983 (8th Cir. 2006). In fact, even gross negligence is not enough to support a claim of deliberate indifference to a serious medical need. *Id*.

Based on the undisputed evidence presented by the Defendants, the Court cannot conclude that Defendant Mullins acted with deliberate indifference to Mr. Plant's medical needs. Defendant Mullins, the Health Services Administrator at the Wrightsville unit, never examined Mr. Plant. (#69-2 at pp. 11-12) Mr. Plant's contact with Defendant Mullins was through the grievance process or through face-to-face conferences that occurred after he filed grievances. (*Id*. at p. 12)

At his deposition, Mr. Plant testified that he sued Defendant Mullins because she was the health services administrator, and, as such, he believed she could "have [had] something done." (#69-3 at pp. 1, 6) Even assuming that as health services administrator Ms. Mullins could have ordered alternative treatment for Mr. Plant, Ms. Mullins cannot be sued under 42 U.S.C. § 1983 on a theory that she is generally liable for the misconduct of those she supervises (also known as *respondeat superior* liability). See, *e.g.*, *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010) (no *respondeat superior* liability under 42 U.S.C. § 1983). "To establish personal liability of the supervisory defendants, [the plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007)("Liability under section 1983 requires a causal link to, and direct

responsibility for, the deprivation of rights.") (internal quotation marks and citation omitted).

Moreover, Mr. Plant has failed to provide any evidence that Defendant Mullins's conduct rose to the level of "intentional maltreatment." As set forth above, Mr. Plant received immediate and follow-up treatment for his injuries. While he may have preferred to be treated by different physicians, he has no constitutional right to be treated by a particular health care provider. *Kinney v. Kalfus*, 25 F.3d 633, 634-35 (8th Cir. 1994). Mr. Plant was examined by physicians who ordered x-rays and an MRI. The undisputed evidence shows that Mr. Plant received constitutionally adequate treatment of his medical condition. (#64-6)

Mr. Plant also complains that Defendant Mullins told him he would be seen by a doctor on June 1, 2012, but he did not see a physician until June 8, 2012, when Dr. Zareen examined him. (#64-5 at pp. 87-91) A prisoner who alleges an unreasonable delay in treatment must present verifying medical evidence that the prison officials "ignored an acute or escalating situation or that [these] delays adversely affected his prognosis." See *Reece v. Groose*, 60 F.3d 487, 491 (8th Cir.1995) (quoting *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir.1995), abrogated on other grounds by *Johnson v. Jones*, 515 U.S. 304, 115 S.Ct. 2151 (1995), as recognized in *Reece*, 60 F.3d at 492 (internal quotation marks omitted)).

Here, Defendant Mullins offers the affidavit of Robert Floss, M.D., in support of her motion. (#64-6) In the affidavit, Dr. Floss states that the alleged delay in seeing a physician from June 1, 2012 until June 8, 2012 did not result in any adverse effect on Mr. Plant's prognosis. (#64-6 at p. 3) Based on the evidence presented, Defendant Mullins is entitled to judgment as a matter of law on Mr. Plant's deliberate-indifference claim.

IV. **Conclusion:**

The Court recommends that the motions for summary judgment (#63, #66) be GRANTED. Mr. Plant's claims against Defendants Burton, Harmon, and Kelley should be DISMISSED, without prejudice. His claims against Defendant Mullins should be DISMISSED, with prejudice.

DATED this 11th day of September, 2014.

_____
UNITED STATES MAGISTRATE JUDGE